IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>NICOLAS OROZCO and EVA GONZALEZ,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:17CV969DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Plaintiff American Family Insurance Company's Motion for Summary Judgment [Docket No. 24], and Defendants Nicolas Orozco and Eva Gonzalez's Motion for Discovery Under Federal Rule of Civil Procedure 56(d) [Docket No. 32]. On November 1, 2018, the court held a hearing on the motions. At the hearing, Plaintiff was represented by Bryan J. Stoddard and Defendants were represented by Darren Davis. The court took the motions under advisement. The court has carefully considered the materials submitted by the parties and the facts and law relevant to the motions. Now being fully advised, the court issues the following Memorandum Decision and Order.

## BACKGROUND

This is a declaratory judgment action regarding uninsured motorist insurance coverage for a car accident. On July 16, 2013, Plaintiff American Family issued an automobile insurance policy to Nicolas Orozco for a 2012 Toyota Camry. Defendants Nicolas Orozco and Eva

Gonzalez were occupants in the Toyota Camry on October 1, 2013, when an accident occurred. The next day, Orozco called American Family to report the accident. He reported that the vehicle at fault had rear-ended his Toyota Camry and fled the accident scene. Orozco further reported that he and Gonzalez were injured in the accident and had already received some medical care.

On November 6, 2013, Samuel Adams with the Adams Davis law firm sent American Family a letter stating that Orozco and Gonzalez had retained the firm in connection with the October 1, 2013 automobile accident in which they were struck by a hit and run motorist. The letter informed American Family that both Orozco and Gonzales sustained multiple injuries and were receiving medical treatment for them. Mr. Adams further stated that they would "accumulate all of their medical records and bills and . . . present them to [American Family] when we understand the full nature and extent of the injuries." On November 8, 2013, Mr. Adams sent American Family another letter regarding the accident which stated that he would be submitting medical bills and claims to American Family for payment under the PIP portion of the Policy.

On November 25, 2013, American Family sent the Adams Davis law firm a letter indicating that Gonzalez's $3000 PIP benefits had been exhausted based on a $3000 payment to LDS Hospital for Gonzalez's treatment. On December 20, 2013, American Family sent Adams Davis a letter indicating that Orozco's $3000 PIP benefits were exhausted based on payments to LDS Hospital and the Injury Recovery Center for Orozco's treatment.

On December 27, 2013, American Family sent Adams Davis two letters, one for each claimant, stating that the "claim file" had been transferred to Tracy Huiras, a casualty claim adjuster, for continued handling. She informed Adams Davis that if they would like to discuss

2

their clients' "claims," she could be reached at the number provided. She also asked that Adams Davis' clients complete authorizations for American Family to obtain updated medical or wage loss information. Adams Davis did not respond to that request, and American Family resent those letters on January 22, 2014. Adams Davis did not respond to the second letter either. Defendants point out that the policy did not require Defendants to sign releases for purposes of American Family's investigation of claims.

On October 7, 2014, American Family sent Adams Davis a letter stating that it "first received notice of this claim on October 2, 2013." The letter advised Adams Davis that there was a question as to whether coverage under the Policy would apply to the loss and that American Family must conduct a complete investigation of the circumstances of the claim before determining whether the Policy provides coverage. The letter then explained that the Policy required the claimants to comply with certain duties, otherwise American Family had no duty to provide coverage. The letter also stated that American Family was "willing to proceed with the investigation of this claim as is necessary or advisable. The Company is willing to proceed with this investigation on the condition that any such act or actions taken by it shall not be a waiver of any right or shall not be an admission of any liability as to any coverage under" the Policy.

Adams Davis did not respond to the reservation of rights letter. Gonzalez's medical treatment was still ongoing in 2014 and her medical providers were still evaluating the full nature and extent of her injuries. Orozco's medical treatment was still ongoing in 2017 and his medical providers were still evaluating the full nature and extent of his injuries.

On April 19, 2016, American Family sent two letters, one for each claimant, stating: "Please forward any additional medical information you have received since our last correspondence. If your client has completed treatment, please contact me to discuss the

3

possibility of settlement. Your cooperation will help us accumulate the necessary materials that will ultimately result in timely settlement decisions. We look forward to hearing from you so we can continue to move this case toward settlement."

On November 23, 2016, American Family sent two more similar letters for each Defendant. There is no correspondence in the record demonstrating that Defendants ever responded to these letters.

On April 13, 2017, Tracy Huiras at American Family had a telephone conversation with attorney York Major at Adams Davis concerning the application of the statute of limitations to Orozco's and Gonzalez's uninsured motorist claims. After the conversation, American Family sent a letter to Adams Davis, stating: "It appears the statute of limitations has expired on this uninsured motorist bodily injury claim. We are following up from our phone call with York Major today requesting notification if you had preserved the statute of limitations on this claim."

Up to April 13, 2017, based on the letters back and forth, Defendants' understanding was that American Family had not denied their claims and were still considering, processing, and evaluating the claims. However, on April 18, 2017, Adams Davis sent American Family a letter invoking binding uninsured motorist arbitration under Utah Code Ann. § 31A-22-305(9)(a)(I). On August 28, 2017, American Family filed this declaratory judgment action seeking a declaration that the statute of limitations has run on Defendants' uninsured motorist claims.

## DISCUSSION

### American Family's Motion for Summary Judgment

American Family seeks summary judgment on its declaratory judgment action that it is not obligated to provide uninsured motorist coverage to Defendants in connection with their October 1, 2013 accident because Defendants failed to meet the three year statute of limitations

4

under Utah Code Annotated Section 31A-21-313 on their uninsured motorist claims. Utah Code Annotated Section 31A-21-313(1)(a) provides: "An action on a written policy or contract of first party insurance shall be commenced within three years after the inception of the loss." The statute of limitations runs from the "inception of the loss." The inception of loss means "the time when the loss was first incurred or began to accrue." *Tucker v. State Farm Mut. Auto Ins.*, 2002 UT 54, ¶¶ 13-14, 53 P.3d 947.

Utah Code Annotated Section 31A-22-305(3) provides that uninsured motorist coverage "provides coverage for covered persons who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, disease, or death." The statute includes in the definition of "uninsured motor vehicle" an "unidentified motor vehicle that left the scene of an accident proximately caused by the motor vehicle operator." *Id.* § 31A-22-305(2)(b). The Utah Supreme Court has explained that "[t]he purpose of mandatory uninsured-motorist insurance is protection equal to that which would be afforded if the offending motorist carried liability insurance. The insurer stands in the shoes of the uninsured motorist and must pay if the motorist would be required to pay." *Chatterton v. Walker*, 938 P.2d 255, 260 (Utah 1997). The statute provides that an insured may choose to make a claim for uninsured motorist benefits on his or her policy and have the claim resolved either through binding arbitration or litigation. *Id.* § 31A-22-305(9)(a).

American Family contends that under Utah law, neither the statute nor case law defines exactly when the inception of the loss would be for a first-party claim for uninsured motorist benefits.[1] The question for the court to determine is when did Defendants claim for uninsured

---

[1] However, "[w]hen the federal courts are called upon to interpret state law, the federal court must look to the rulings of the highest state court, and, if no such rulings exist, must

5

motorist benefits begin to accrue? American Family lists possible answers as: (1) the date of the accident when the at-fault vehicle fled the scene; (2) when Defendants incurred medical expenses as a result of the accident involving an uninsured vehicle; (3) when Defendants each incurred more than $3000 in medical expenses and their PIP benefit was exhausted; (4) when American Family paid the $3000 PIP benefit for each of them; or (5) when American Family notified Defendants that the PIP policies were exhausted for each of them. Because all of these points in time were more than three years before Defendants demand for uninsured motorist arbitration, American Family contends that Defendants' uninsured motorist claims are time barred by the three-year statute of limitations.

Defendants, however, argue that their arbitration demand was timely because the earliest the statute of limitations could have been triggered was April 13, 2017, when American Family notified Defendants that their claims appeared to be barred by the statute of limitations. A first-party insurance action does not begin to run until the inception of loss, and Utah law provides that the inception of loss is not triggered until the insurance company notifies the insured of its refusal to pay or denial of disputed benefits.

Courts interpreting the statutory language at issue in this case in the context of a case involving the breach of an insurer's contractual duty have determined that the "inception of loss" occurs when the insured incurs its first loss due to the insurer's actions. In *Tucker v. State Farm Mut. Auto. Ins.*, 2002 UT 54, 53 P.3d 947, the claimants sought to recover PIP benefits for personal injuries sustained in an automobile accident under a first-party insurance policy. *Id.* at ¶¶ 2-3, 14. The insurer provided partial payment but denied the rest. *Id.* at ¶ 3. The Utah

---

endeavor to predict how that high court would rule." *Johnson v. Riddle*, 305 F.3d 1107, 1118 (10th Cir. 2002).

Supreme Court held that when the insurer paid only a portion of the expenses, the claimants were on notice that the insurer did not intend to reimburse their full expenses and the inception of loss was triggered. *Id.* at ¶ 16.

The *Tucker* court explained that causes of action under first-party insurance are based on a contract and only a breach of the express or implied duties under the contract give rise to the cause of action. *Id.* ¶ 14. The court also pointed out that the Utah statute "prohibits filing an action until, among other things, the insurer denies full payment." *Id.* at ¶ 15. Therefore, the court held that the "inception of loss" occurred "no later than the date on which the insurer refuse[d] to pay" and "such a refusal to pay constitutes 'denial of full payment' under section 31A-21-313(4)(c)." *Id.*

The *Tucker* court made clear that the insureds must be "on notice" that the insurance company did not intend to reimburse or pay for their medical expenses before the "inception of the loss" occurs, thereby "triggering the beginning of the limitations period." *Id.* "It is clear that in November 1996 the Tuckers were on notice that State Farm did not intend to fully reimburse the Tuckers' medical expenses. Thus, November 1996 was the inception of the loss triggering the beginning of the limitations period." *Id.* at ¶16. This holding is consistent with Utah's longstanding view that a statute of limitations cannot begin to run until a cause of action actually exists. *Kimball v. McCormick*, 259 P. 313, 317 (Utah 1927).

Several cases from this federal district have held that the inception of loss refers to when the insurance company refuses to indemnify for the loss not to when the insured loss occurred. *Commonwealth Land Title Ins. v. OMG Americas, Inc.*, 2:10cv1027TC, 2012 WL 4856391 (D. Utah Oct. 12, 2012); *Fuller v. Nationwide Ins.*, 1:08cv129TS, 2009 WL 723245 (D. Utah Mar. 16, 2009); *Royal Indem. Co. v. Jacobsen*, 863 F. Supp. 1537, 1540 n.8 (D. Utah 1994). The

7

statute of limitations is triggered by the breach of the insurance contract. *See Lang v. Aetna Life Ins.*, 196 F.3d 1102, 1105 (10th Cir. 1999) ("statute of limitations was triggered not by the plaintiff's personal disability in 1979 but only upon the insurer's alleged breach in 1991.").

In this case, the inception of loss could not have been triggered by the date of the accident or the date medical expenses were first incurred. Defendants' notified American Family of the accident and the fact that the at-fault vehicle had left the scene. American Family's documents state that it had notice of the claim on October 2, 2013. That notice date corresponds with the date that Orozco called American Family to report the accident. Defendants' November 6, 2013 letter also stated that Defendants were struck by a hit and run motorist and Defendants sustained multiple injuries. This letter notified American Family of Defendants' uninsured motorist claims. Defendants also sent American Family a letter on November 8, 2013, notifying American Family of Defendants' PIP claims. These separate letters demonstrate that Defendants had two separate types of claims.

The inception of loss could not have been American Family paying the PIP benefits because the PIP claims had nothing to do with the uninsured motorist claims. American Family is attempting to conflate both claims to its own benefit. The payment of PIP benefits did not give Defendants notice that they needed to demand arbitration or sue American Family for uninsured motorist benefits. In fact, the payment of the PIP benefits gave no indication to Defendants that they were adverse with American Family in any way. Defendants could not have filed a lawsuit against American Family for uninsured motorist benefits based on its payment of PIP benefits. Defendants could have sued American Family at that time if the letter American Family sent Defendants notifying them that the PIP benefits were exhausted also stated that Defendant had no further claim under the Policy in relation to the accident. But the letter American Family sent

Defendants did not reference uninsured motorist benefits or deny coverage for such benefits.

American Family asserts that Defendants did not make a claim for uninsured motorist benefits. However, that argument is belied by the correspondence in the file. The day after the accident Orozco called American Family and gave it notice that he had been hit by a motorist who left the scene and he and a passenger were injured. Adams Davis then sent American Family a letter notifying American Family of the hit and run accident. The correspondence between the parties after the PIP benefits were exhausted demonstrates that American Family knew there were still outstanding claims in relation to the accident after the PIP claims were exhausted. The claim file was transferred to a claims adjuster after the PIP benefits were exhausted and the claims adjuster offered to discuss the claim with Defendants, requested updated medical information regarding the claim, and later warned Defendants that the claim could be compromised by a failure to meet their duties under the Policy. The only claim that was in existence at that time was an uninsured motorist claim.

American Family argues that Defendants were required to specifically tell American Family that they had an uninsured motorist claim. American Family does not point to a statutory requirement or a Policy requirement that Defendants were required to make a specific claim for a specific type of benefit after an automobile accident. American Family's Policy explains what to do "IF YOU HAVE AN AUTO ACCIDENT OR LOSS." In that portion of the Policy, under the heading "NOTIFY US," it states: "Tell us promptly. Give time, place, and details. Include names and addresses of injured persons and witnesses. Notice to one of our agents is considered notice to us." This section of the Policy also states with respect to uninsured motorist coverage: "Each person claiming Uninsured Motorist coverage must promptly notify the police if a hit-and-run driver is involved." However, there is nothing in this section that requires the insured to

9

specifically tell American Family that it has an uninsured motorist claim. The insured is only required to notify American Family of the accident or loss and provide details that allow American Family to investigate the accident. Defendants complied with these requirements. Based on the information Orozco provided it in his telephone call and subsequent letters, American Family knew there was an uninsured motorist claim involving a hit-and-run motorist. The Policy asks the insured to provide such details of the accident. It does not require the insured to identify every type of insurance benefit he or she may be entitled to receive under the Policy. American Family drafted the Policy. If American Family wants to require its insureds to specifically identify the type of benefit the insured may be entitled to receive in connection with the accident in order to receive coverage for that type of benefit, it needs to include such a requirement in its Policy. An ordinary insured should be able to make a claim with his or her insurance company in connection with an automobile accident without the aid of an attorney. American Family agreed to "provide the insurance described in this policy in return for your premium payment and compliance with all policy terms." The Policy only requires notice and details of the accident. American Family cannot now impose additional requirements for making a claim that are not included in the Policy.

American Family argues that if the inception of loss does not occur until the denial of a claim, an insured has an unlimited amount of time to submit a claim. However, American Family can address that concern in its Policy provisions. The Policy in this case requires an insured to notify American Family "promptly" of an accident or loss. If notice is not given "promptly," American Family can deny the claim under that provision in the Policy.

American Family's denial of the existence an uninsured motorist claim in this case is simply not supported by the evidence. The letters requesting releases of information and updated

medical information show that American Family knew there were claims in addition to the exhausted claims for PIP benefits and those claims could have only been uninsured motorist claims. American Family's letters from April 19, 2016, showed that American Family was reviewing those claims, had not denied the claims, wanted to know if medical treatment related to those claims was complete, and was still contemplating settlement of those claims.

This is not a case where American Family was not on notice of a claim and is now surprised with a claim it did not have an opportunity to investigate when the evidence was fresh. *Myers v. McDonald*, 635 P.2d 84, 86 (Utah 1981) (statutes of limitations "are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared."). Orozco provided American Family with notice the day after the accident that it was a hit-and-run motorist accident and that he and his passenger were injured. Defendants also sent a letter on November 6, 2013, informing American Family that Defendants sustained multiple injuries and stating that Defendants would give American Family all the medical records when treatment was completed. American Family's letters in April 2016 were asking whether medical treatment was completed.

Defendants' failure to respond to American Family's repeated letters was not helpful to the processing of the claim. By doing so, Defendants ran the risk of receiving a denial based on such failures. But American Family did not invoke the Policy provisions requiring Defendants to provide it with medical records and documents related to the accident to deny the claim. Such a denial would have provided grounds for Defendants to sue for the benefits, and the parties could have debated whether Defendants' delay was unreasonable enough to justify a denial of coverage on those grounds. Instead, American Family erroneously invoked the statute of limitations even

though Defendants obviously had a claim, both parties had been proceeding as if there was a claim, and there was never a denial of the claim.

Defendants' uninsured motorist claims were not potentially denied until American Family's April 13, 2017 letter indicated that the uninsured motorist claims appeared to be barred by the statute of limitations. The April 13, 2017 telephone call and letter were the first indications that the parties to the Policy were potentially adverse to one another. Therefore, even if the April 13, 2017 letter is deemed a denial, Defendants' demand for arbitration on April 18, 2017, which they filed out of an abundance of caution, was well within the three-year statute of limitations. There would have been no basis for Defendants to file a lawsuit or demand arbitration against American Family prior to the April 18, 2017 communications. Defendants losses under a first-party insurance contract do not accrue until American Family breaches its policy by refusing to pay contractual benefits and Defendants were put on notice of such denial. Therefore, the court concludes that American Family is not entitled to summary judgment on its declaratory judgment claim. Accordingly, Defendants' motion for additional discovery prior to the court's ruling on American Family's motion for summary judgment is unnecessary, and the court denies it as moot.

## CONCLUSION

Based on the above reasoning, Plaintiff American Family Insurance Company's Motion for Summary Judgment [Docket No. 24] is DENIED, and Defendants Nicolas Orozco and Eva Gonzalez's Motion for Discovery Under Federal Rule of Civil Procedure 56(d) [Docket No. 32] is MOOT.

DATED this 13th day of November, 2018.

                BY THE COURT:

                _____
                DALE A. KIMBALL
                United States District Judge